Estate of Hahto: Hahto, Administrator, Respondent, vs. State Department of Mental Hygiene, Appellant.*

*October 8—November 8, 1940.*

* Motion for rehearing denied January 7, 1941.

*Blaine M. Linke,* collection and deportation counsel, and *Paul B. Knuese,* assistant collection and deportation counsel, for the appellant.

For the respondent there was a brief by *Wm. A. Campman,* attorney, and *A. L. Devos,* guardian *ad litem,* both of Neillsville, and oral argument by *Mr. Campman.*

FAIRCHILD, J. The practice of adjusting claims against those who may be responsible for maintenance of a member of their family while such member is an inmate of a state asylum has been outlined by statutes for many years. The method has always included a provision for consideration of ability to pay on the part of one to be charged. As there is no direct liability independent of that imposed by statute—none existing at common law—the terms of the statute imposing the liability are to be followed in a proceeding to charge that maintenance against a wife, a husband, or children. Statutes relating to claims of this character were amended in 1935 by the adoption of ch. 336 of the laws of that year, but the change made did not result in a direct liability attaching to a husband, wife, or child of an incompetent. The statutes still contain a provision for a definite procedure to be followed in determining liability for the support of an incompetent relative.

The amending act, ch. 336, Laws of 1935, did result in changing the procedure. It repealed sec. 51.30, Stats., which incorporated by reference the procedure to be followed in determining liability which was set out in sec. 49.11, which had been the accepted course in adjusting these matters up to that time. The statutory method set up in sec. 46.10 (8) is exclusive. *Saxville v. Bartlett,* 126 Wis. 655, 105 N. W. 1052; *Guardianship of Heck,* 225 Wis. 636, 275 N. W. 520. By the amendment sec. 46.10 became of consequence in these par-

ticulars. Sub. (8) of that section provides that the state board of control shall appoint an attorney at law to be known as the collection and deportation counsel and requires him to make reasonable and proper efforts, giving "due regard in all cases to others who may be lawfully dependent upon such property for support, to recover the cost of maintenance furnished." It further provides that the collection counsel shall investigate the financial condition of the relatives in order to determine the ability of such relatives "to make payment in whole or in part for the maintenance of said inmates." Sub. (9) gives the collection and deportation counsel power to subpœna witnesses, take testimony under oath, and examine public records "relating to the estate of an inmate or of a relative liable for his support or maintenance." It is conceded that no investigation was held or proceedings of any kind conducted during the lifetime of the wife to determine liability on her part, and the question now raised is whether in the absence of such proceedings an absolute right to collect out of her estate exists.

Before the amendment an investigation and a determination upon the terms of liability were conditions precedent to the enforcement of a claim. Although the new statutory procedure is different from the old, it is still a condition precedent to recovery. Procedure to be followed now is outlined in sec. 46.10 (8) and (9), Stats. Proceedings under the former plan were to be initiated by a petition to the county judge of the proper county. Since the amendment the financial condition of the relative is to be investigated by the collection and deportation counsel "in order to determine the ability of . . . any such relative to make payment in whole or in part for the maintenance."

In support of the claim that the liability of the wife is a fixed liability and attached to her estate, appellant urges that sec. 46.10 (7), Stats., creates an obligation upon the wife to support her insane husband regardless of an intermediate de-

termination of the appellant to pay made by the collection and deportation counsel. This contention overlooks the requirements that the determination is to follow giving due consideration to those who may be lawfully dependent for their support upon the property discovered by the counsel in his investigation. The practice followed in these matters for many years and the words of the statute now involved do not indicate a legislative intent to require the board of control or the collection and deportation counsel to seize upon the last penny in the possession of a family in straitened circumstances.

In referring to the liability of an inmate for his own support, the words "or his estate" are used, but these words are missing in the reference to liability of relatives. It is considered that the legislature did not intend to rest the liability regardless of any and all considerations upon the relatives, but intended to make them liable only after consideration of the circumstances pointed out in the statute had been given which resulted in a determination of the collection counsel that the ability of the relative is such that the obligation or a portion of it ought to be visited upon that relative. An inmate himself during his life and his estate after his death are to account for his care at public expense, but no such absolute arrangement in connection with the relatives' obligation exists.

The trial court held that an investigation and a determination with reference to the making of a claim must occur during the lifetime of the relative sought to be charged, and with that we agree. *Matter of Willis,* 94 Misc. 29, 158 N. Y. Supp. 985, 175 App. Div. 933, 161 N. Y. Supp. 1150; *Matter of Cross,* 99 Misc. 199, 165 N. Y. Supp. 710.

*By the Court.*—Judgment affirmed.