IN RE GUARDIANSHIP OF CLAYTON OCHSNER, INCOMPETENT. CLAY COUNTY, NEBRASKA, APPELLEE, v. JOHN A. BOTTORF, GUARDIAN OF CLAYTON OCHSNER, INCOMPETENT, APPELLANT.

88 N. W. 2d 898

Filed March 21, 1958. No. 34337.

*Massie, Bottorf & Massie,* for appellant.

*Clarence S. Beck,* Attorney General, *Homer L. Kyle,* and *S. W. Moger,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The trial of a charge of a felony against Clayton Ochsner in the district court for Clay County resulted in a verdict of not guilty because of his insanity at the time of the alleged commission of the offense. That court, because of the verdict, adjudged that Clayton Ochsner, hereafter referred to as the incompetent, should be and he was committed to the state hospital for the mentally ill at Ingleside. He was admitted to that institution March 14, 1952, and he has since been there confined and cared for as a mentally ill person. The incompetent was a resident of Clay County and John A. Bottorf was appointed by the county court of that county guardian of him.

The amount of the charge for the care and maintenance of the incompetent at the state hospital for the period of March 14, 1952, to April 1, 1956, was paid to the hospital by appellee and it filed a claim for the amount thereof in the matter of the guardianship of the incompetent. The county court allowed the claim and ordered the guardian to pay it with funds of the guardianship. The guardian appealed therefrom to the dis-

trict court. Appellee, by its petition therein, alleged the confinement of the incompetent in the state hospital commencing with March 14, 1952; the amount of the charge for his care and maintenance in the hospital for that time; the payment thereof to the hospital by appellee; the ownership by the incompetent of an estate and income sufficient to meet the expense of his care and maintenance in the hospital without depriving those dependent upon him of their necessary support; and the refusal of the guardian to pay the amount of the expense for the designated period. Appellee demanded judgment therefor against the appellant. The answer of appellant contained a general denial of the contents of the petition of appellee.

The district court found the facts in favor of appellee and rendered judgment for it and against appellant for the amount claimed. His motion for a new trial was denied and this appeal presents the record for review. The validity of the judgment is contested by appellant because, as he asserts, it is not supported by the evidence and is contrary to law.

Appellee relies upon the authority of section 83-352, R. S. Supp., 1955, for the successful prosecution of the claim involved in this litigation. It contains these relevant provisions: "If any patient in a state hospital for the mentally ill * * * is possessed of an estate and income sufficient to meet the expense of the patient's care and maintenance in the hospital without depriving those dependent upon such patient * * * of their necessary support, the guardian * * * of such patient shall pay to the superintendent of the hospital, quarterly during the time the patient is in the hospital, a sum to be fixed by the Board of Control which shall be an amount equal to the per capita cost of maintaining the patient in the hospital. * * * The amounts to be paid under this section shall constitute a claim against the estate of the patient and be collectible therefrom. * * * It shall be the duty of the county board of each county to investi-

gate all unpaid claims and cause action to be brought in the name of the county by the county attorney to recover thereon, where it is probable that some recovery can be made."

The grant of authority to the county by this enactment must be strictly construed against the county. State ex rel. Johnson v County of Gage, 154 Neb. 822, 49 N. W. 2d 672. It does not purport to create a general, absolute, and unconditional liability.

The statute considered in Howard County v. Enevoldsen, 118 Neb. 222, 224 N. W. 280, recited that every person who could not earn a livelihood because of bodily infirmity, mental deficiency, or other unavoidable cause should be supported by designated relatives, if any of them had sufficient ability, and if they refused when directed by the county board, they should pay for that purpose the amount fixed by the county board not in excess of a designated maximum. The case concerned the refusal of a father to contribute for an unfortunate daughter. The court said the right of Howard County was statutory and was required to be established under the provisions of the statute. This language is contained in the report of that case: "Before a cause of action accrues in favor of a county or its county board under section 5140 against a relative who fails to furnish support to an indigent relative entitled to support under the provisions of said section, it is necessary that such delinquent relative be first directed by order of the county board to furnish support and refuse to do so." In the opinion the court said: "Under that statute, before a recovery could be had the plaintiffs were required to prove that Fredricka Petersen was a poor person unable to earn a livelihood in consequence of some bodily infirmity, idiocy, lunacy or other unavoidable cause. There is no evidence to show that she was unable to earn a livelihood in consequence of any bodily infirmity, idiocy or lunacy; so, if plaintiffs are entitled to recover in this action it must be because of evidence showing

inability by reason of some 'other unavoidable cause.' "

Estate of Hahto, 236 Wis. 65, 294 N. W. 500, concerned a statute which required a designated officer to make reasonable and proper efforts, giving "due regard in all cases to others who may be lawfully dependent upon such property for support, to recover the cost of maintenance furnished" to an inmate of a state institution. The subject matter of the case was a claim against the estate of a deceased wife for care and maintenance of her incompetent husband furnished by the State Department of Mental Hygiene. In the opinion the court said: "Before the amendment an investigation and a determination upon the terms of liability were conditions precedent to the enforcement of a claim. Although the new statutory procedure is different from the old, it is still a condition precedent to recovery."

County of Audrain v. Muir, 297 Mo. 499, 249 S. W. 383, declares: "The provision made by law for the support of an indigent insane wife by the county is a charitable provision, from which no implication of a promise by her husband to pay for the expense of her confinement in a state hospital arises in the absence of fraud * * *; and in order for the county to recover back from him the amount of money it has paid the hospital for keeping her it must bring itself within the statutory provision * * * and show that the husband was 'bound to provide' for his wife's support and maintenance and was of 'sufficient ability to pay the same.' "

The common law did not recognize liability of an insane person for the expense of his care and maintenance while he was confined in a public institution for the mentally ill. The statutory enactment creating such an obligation and containing requirements relative to determining such liability is exclusive. Public authorities to recover for such expense of the care and maintenance of an incompetent must bring themselves within the terms of the statute.

Wiseman v. State (Tex. Civ. App.), 94 S. W. 2d 265,

declares: "Right of state to reimbursement for care and maintenance of demented persons did not exist at common law, state's only right being statutory * * *. State which did not pursue right provided by statute, allowing state to contract for liability by incompetent's estate for incompetent's care or secure judicial ascertainment at instance of board of control to determine whether incompetent's estate was legally liable for his care, held not entitled to recover for care provided incompetent by state subsequent to passage of such statute * * *." See, also, In re Application of St. Lawrence State Hospital for the Insane, 13 App. Div. 436, 43 N. Y. S. 608; In re Bedford, 11 N. J. Misc. 589, 168 A. 134; Estate of Hahto, *supra;* 44 C. J. S., Insane Persons, § 75 b, p. 177, § 75 c (3) (a), p. 183.

In Duhrkopf v. Bennett, 108 Neb. 142, 187 N. W. 813, this court said: "Where a right has been created by statute which did not exist at the common law, the legislature may impose restrictions thereon, and the conditions so imposed qualify and are an integral part of the act and must be fully complied with in the manner therein prescribed." See, also, Park v. School District, 127 Neb. 767, 257 N. W. 219; Johansen v. Farmers Mutual Hail Ins. Assn., 133 Neb. 118, 274 N. W. 393; Ray v. Sanitary Garbage Co., 134 Neb. 178, 278 N. W. 139.

The observation of the court in Swaney v. Gage County, 64 Neb. 627, 90 N. W. 542, is appropriate: "It must be conceded that the legislative body, which created the right of action, had absolute power to determine the conditions under which it must be brought * * *. Without such a law the plaintiff in this case would have had no right of action at all * * *."

The statute above quoted is indispensable to the cause of action asserted by appellee. It creates a right that did not exist at common law. It requires as a condition precedent to the existence and enjoyment of the right that the incompetent be possessed of an estate and income sufficient to meet the expense of the incompe-

tent's care and maintenance in the hospital without depriving those dependent upon him of their necessary support. This is not a matter of defense to be pleaded and established by the incompetent or his guardian. It is by the statute made a condition of the right and of the remedy. Appellee could only allege a cause of action by asserting that the requirements of the condition implicit in the statute did exist and appellee could establish a right to recover on the claim exhibited by its petition only by establishing by evidence the existence of the facts made necessary by the condition. Appellee complied with the requirements in this respect in its petition in the district court. It alleged a legally sufficient cause of action but it produced or offered no evidence that the incompetent was possessed of an estate and income sufficient to meet the expense of his care and maintenance in the hospital without depriving those dependent upon him of their necessary support. The record sustains the assignment of appellant that the judgment is not sustained by the evidence and that it is contrary to law. This is fatal to it.

The judgment should be and it is reversed and the cause is remanded to the district court for Clay County with directions to render a judgment in the cause disallowing and dismissing the petition and claim of appellee.

REVERSED AND REMANDED WITH DIRECTIONS.